**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE UNITED STATES OF AMERICA | |
| vs. | 2:20-cr-116 |
| BRIAN BARTELS | |

**SENTENCING MEMORANDUM AND**
**POSITION WITH RESPECT TO SENTENCING FACTORS**

On September 22, 2020, Brian Bartels pleaded guilty to obstructing, impeding, or interfering with law enforcement incident to civil disorder in violation of 18 U.S.C. § 231(a)(3). In pleading guilty, Brian waived his right to a trial by jury and limited his appellate rights. He entered his guilty plea willingly because he accepts responsibility for the wrongdoing.

Mr. Bartels does not seek to excuse his conduct. To the contrary, Mr. Bartels accepted responsibility for his actions within days of committing the crime. Less than 48 hours after his crime, he met with investigators and explained to them his role. He expressed remorse and even confusion at his own actions.

Though his conduct in redressing his actions does not excuse his actions, it shows that Mr. Bartels is capable of maturing and is amenable to less restrictive punishment. Mr. Bartels is ready to move on with his life, albeit with a felony conviction to his name. He hopes for this Court's grace and leniency and requests a probationary sentence for the reasons stated herein.

**I.  Offense Conduct**

The offense conduct in this case will follow Brian Bartels for the rest of his life. His actions were caught on video and were played tens of thousands of times on local news, national news, and social media. A video of him solemnly turning himself in at the Pittsburgh Bureau of Police Headquarters received over 1.6 million views on Twitter. He was condemned by people on the

political right and rebuked by people on the political left. For a moment, he became the face of how not to protest.

Brian's actions, in kicking in the windshield of a police vehicle and then spray painting the vehicle, resulted in that vehicle being taken out of commission. Further, his actions likely invigorated several other in the crowd who soon escalated the destruction. The escalation, which occurred rapidly and unexpectedly, led to the closure of several businesses. As a result, Mr. Bartels was indicted for and pleaded guilty to violating 18 U.S.C. § 231(a)(3).

## II.     United States Sentencing Guidelines Calculations

In this case, the nature and circumstances of the offense, history and characteristics of the defendant, as well as sentencing ranges for the most analogous and meaningfully applicable guidelines, all weigh heavily in favor of a probationary sentence.

Although no sentencing guideline expressly applies to the substantive offense in this case, USSG §2X5.1 instructs this Court to use "the most analogous offense guideline" and any guideline and policy statement "that can be applied meaningfully." The most analogous guideline in this case is USSG §2A2.4. That section, titled Obstructing or Impeding Officers, provides for a base offense level of 10. A similarly applicable guideline in this case is §2B1.1, which covers a wide range of theft offenses and property damage. That provision provides a base offense level of 6.

The Government and the United States Probation Office propose that the most analogous guideline is §2J1.2, titled Obstruction of Justice. This section has a base offense level of 14. After application of §3E1.1 for acceptance of responsibility, this results in an adjusted offense level of 10-16 months. However, this is not the most analogous guideline and this Court should reject it. Chapter 2, part J of the guidelines covers crimes which obstruct the administration of *__justice__*. The administration of justice is the "maintenance of right within a political community by means of

physical force of the state" or "the state's application of the sanction of force to the rule of right."[1] That is, the administration of justice is the process of maintaining the legitimacy of government through the application laws. Mr. Bartels's conduct did not obstruct the administration of justice. Mr. Bartels's conduct, as he readily admits, did destroy law enforcement property and impede the work of law enforcement officers.

Rejection of §2J1.2 is further supported by the fact that the statutory provisions that §2J1.2 applies to are much different than both the offense conduct and the elements of 18 U.S.C. § 231(a)(3). The statutory provisions covered by §2J1.2 include numerous crimes which proscribe impeding investigations,[2] obstructing official proceedings,[3] altering court records,[4] attempting to influence jurors,[5] and unlawfully influencing witnesses.[6] Consistent with other sections of Part J, these are statutes that cover conduct that relates with the investigative process, the administrative process, and the judicial process.[7]

Chapter 2, part A, however, addresses offenses against people and Chapter 2, part B addresses basic economic offenses. The guidelines of §2A2.4 and §2B1.1 are individually more analogous to the offense conduct and 18 U.S.C. § 231(a)(3).

---

[1] *Administration of Justice*, Black's Law Dictionary (11th ed. 2019).
[2] *See* 18 U.S.C. § 1001 (relating to false statements made to a federal agency, but only when facing an increased maximum punishment due to relation to international or domestic terrorism, or to sex offenses); 18 U.S.C. § 1510 (relating to obstructing a criminal investigation); 18 U.S.C. § 665 (relating to obstructing an investigation under the Workforce Innovation and Opportunity Act); 18 U.S.C. § 1511 (relating to obstructing law enforcement with intent to facilitate illegal gambling).
[3] *See* 18 U.S.C. § 1505 (relating to obstructing proceedings before agencies of the United States).
[4] *See* 18 U.S.C. § 1506 (relating to theft or alteration of court documents).
[5] *See* 18 U.S.C. § 1503 (relating to threatening or attempting to influence jurors or officers of the court); 18 U.S.C. § 1507 (relating to attempting to unlawfully influence jurors through parade or picketing); 18 U.S.C. § 1508 (relating to surreptitiously recording grand jury or petit jury proceedings).
[6] *See* 18 U.S.C. § 1512 (relating to tampering with a witness, victim, or informant); 18 U.S.C. § 1513 (relating to retaliating against a witness, victim, or informant).
[7] *See* §2J1.1 (Contempt); §2J1.3 (Perjury or Subornation of Perjury; Bribery of Witness); §2J1.5 (Failure to Appear by Material Witness); §2J1.6 (Failure to Appear by Defendant); §2J1.9 (Payment to Witness).

USSG §2A2.4, which is titled Obstructing or Impeding Officers, is the most analogous offense guideline because it applies to many provisions which proscribe interfering with law enforcement performing non-investigative functions. For example, §2A2.4 applies to 18 U.S.C. § 111, which prohibits resisting, assaulting, or impeding officers or employees of the United States. Similarly, §2A2.4 applies to 18 U.S.C. § 3056(d), which prohibits obstructing or interfering with federal law enforcement in performance of the President, Vice President, or other statutorily covered persons. Though Mr. Bartels never actually encountered law enforcement, the conduct contemplated in 18 U.S.C. §111 and § 3056(d) is similar in nature to the § 231(a)(3) prohibition of "any act to obstruct, impede, or interfere" law enforcement incident to a civil disorder.

The base offense level under §2A2.4 is 10. Having clearly demonstrated acceptance of responsibility for his offense, Mr. Bartels should receive a 2-level reduction under §3E1.1. With an adjusted offense level of 8, the applicable guideline range is 0-6 months.

USSG §2B1.1 is sufficiently analogous in this case as well. Though §231(a)(3) does not specifically contemplate damaging property as the *actus reas*, the offense conduct in this case was a property crime. The aftermath of Mr. Bartels's conduct is of course relevant to this Court's sentence, however the guidelines continue to function as "the starting point and initial benchmark. *Gall v. United States*, 552 U.S. 38, 49 (2007).

The base offense level under §2B1.1(a)(2) is 6. The Government in this case stipulates to a restitution amount of $1,000 for Mr. Bartels's conduct, which would result in no increase to the offense level under §2B1.1(b)(1)(A). After application of §3E1.1 for Mr. Bartels's acceptance of responsibility, the adjusted offense level would be 4 and the applicable guideline range is 0-6 months.

Though the Government seeks to apply §2J1.2 in this case, that section is not sufficiently analogous and thus inapplicable to the conduct proscribed by 18 U.S.C. §231(a)(3). Both sections

§2A2.4 and §2B1.1 are sufficiently analogous and this Court should apply one of these provisions and this Court should apply those provisions when sentencing Mr. Bartels.

### III. History & Characteristics of Brian Bartels[8]

Brian Bartels is 20 years old. He was born December 30, 1999 to Jordan and Shannon Bartels, his loving and supportive parents. Brian has struggled with mental health issues, which likely contributed to his impulsive and immature decision to vandalize the police vehicle on May 30, 2020. Despite his struggles, however, Brian is committed to being a different person than the world saw on the evening news and on social media.

> *"I called my parents on the drive home and I'm like, 'I am about to drop a bomb on you. Sorry to ruin your day. Uhh… I did something stupid at the protest."*[9]

At the outset, most of Mr. Bartels's actions on May 30, 2020 can be attributed to his youth and emotional immaturity. Though his lack of maturity and impulsive decision-making should not shield him from the consequences of his actions, it should be considered by this Court in crafting a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing.

Brian is capable of being a productive and law-abiding member of society. While being homeschooled, he enrolled in classes at the Community College of Allegheny County and he is currently working toward his degree in music. In addition to school, he has maintained steady employment and has many career options awaiting him.

---

[8] The following letters of support are attached to this memorandum:
  Exhibit A: Ryan & Melissa Berding
  Exhibit B: Ruth Butler
  Exhibit C: Donita Hammond
  Exhibit D: Andrew Rogers
  Exhibit E: Johna Brill
  Exhibit F: Amy Wilks
  Exhibit G: Thomas Oleson
  Exhibit H: Barbara Gross
[9] Statement of Brian Bartels during an interview with investigators on June 1, 2020.

Recognizing that his decisions that day were the product of a feeling of rage and helplessness, he has decided to seek a degree in political science and psychology so that he can better understand the world and use non-violent means to effect the change he wants. To that end, he has been accepted to complete his bachelor's degree at Ohio Wesleyan University and intends to begin classes once his legal proceedings have concluded.

Most importantly, Brian is now taking his mental health and decision-making processes more seriously. He is currently seeing a therapist for his diagnoses of borderline personality disorder, obsessive compulsive disorder, and attention deficit hyperactivity disorder.[10] He maintains a sober lifestyle and has a good relationship with his family.

Unlike so many people who find themselves being sentenced in federal court, Brian's life story is just beginning. He has not established a pattern of behavior and he has the ability to immediately turn things around. He is talented and intelligent. All of this weighs heavily in favor of supervision rather than incarceration.

## IV. Sentencing Request

As a remorseful first-offender with stable employment and education, Brian's risk of recidivism is low. His youthful and impulsive decision will follow him for the rest of his life. He stands convicted of one federal felony and is awaiting trial on several state felonies for his actions that day. Under the guidelines and in consideration of the factors under 18 U.S.C. § 3553(a), Mr. Bartels should be sentenced to a period of probation.

          Respectfully submitted,
          /s/Joseph S. Otte
          Joseph S. Otte
          PA ID No. 318862
          429 Fourth Ave., Suite 1002
          Pittsburgh, PA 15219

---

[10] PSR ¶40-43.