1

```
 1

 2                IN THE UNITED STATES DISTRICT COURT
               FOR THE WESTERN DISTRICT OF PENNSYLVANIA
 3

 4      UNITED STATES OF AMERICA,

 5         vs.
                                       Criminal No. 20-116
 6      BRIAN JORDAN BARTELS,

 7                    Defendant.

 8
                              - - -
 9

10      Transcript of proceedings on January 27, 2021 United States
        District Court, Pittsburgh, Pennsylvania, before Judge
11      Arthur J. Schwab.

12

13      APPEARANCES:

14         For the Government:    U.S. Attorney's Office
                                  Shaun Sweeney, Esquire
15                                U.S. Courthouse
                                  700 Grant Street
16                                Pittsburgh, Pennsylvania 15219

17         For the Defendant:     Joseph S. Otte  Esquire
                                  429 Fourth Avenue
18                                Suite 1002
                                  Pittsburgh, PA  15219
19
           Court Reporter:        Marsia L. Balobeck
20                                700 Grant Street
                                  Suite 5300
21                                Pittsburgh, Pennsylvania 15219

22

23

24
              Proceedings recorded by mechanical stenography;
25      transcript produced by computer-aided transcription.
```

```
 1                    P R O C E E D I N G S
 2          (Proceedings held by way of hybrid hearing; in-person
 3     and over Zoom videoconferencing)
 4          THE COURT:  Everyone, you may remain seated; and at
 5     least in the back row, you need to socially distance
 6     yourselves.  Thank you.  I appreciate if everyone would mute
 7     their devices, please.  I'm getting some feedback.
 8          Good morning.  This is the time and place set for --
 9     I'm still getting feedback.  In addition to muting yourself,
10     turn your volume down on your device, please.
11          This is the time and place set for hybrid sentencing
12     in criminal number 20-00116.  All parties are appearing by
13     videoconference except for the Court -- I'm physically in the
14     courtroom along with the court reporter.  Also with us in
15     person are the defendant and defense counsel, at defendant's
16     request, along with two guests.  So again, everyone is
17     appearing by Zoom except the Court, court reporter, defendant,
18     defense counsel and two guests, who are all here in person.
19          For the government, who do we have on the
20     videoconference, please?
21          MR. SWEENEY:  Shaun Sweeney, assistant U.S. attorney
22     here for the government, Your Honor.
23          THE COURT:  Welcome.  On behalf of the defendant,
24     please?
25          MR. OTTE:  May it please the Court, Joe Otte on
```

1    behalf of Mr. Bartels.

2              THE COURT:  Welcome.  And we have some people on the

3    videoconference.  We have two reporters, welcome, and one

4    other person.  Do you know who the other person is, defense

5    counsel?

6              MR. OTTE:  No, Your Honor.

7              THE DEPUTY CLERK:  I believe she's also a reporter,

8    Judge.

9              THE COURT:  Well, I welcome all three reporters.  And

10   if you have any trouble hearing at any time, just call my

11   chambers and we'll help you as much as we can so you can

12   participate and hear what occurs.

13             These proceedings are being transcribed by our court

14   reporter the same as if everyone was physically present in the

15   courtroom.  Before proceeding further, I want to make it clear

16   on the record to everyone that recording, whether audio, video

17   or both, photographing, broadcasting or otherwise

18   electronically or digitally capturing the content of any civil

19   or criminal court proceeding remains strictly prohibited; in

20   other words, illegal.  Further, I instruct all parties to mute

21   themselves when not speaking, and when they do speak to

22   identify themselves by name each time.

23             I would ask the defendant to raise his right hand to

24   be sworn, please.  You may remain seated so we can see you on

25   the camera.  Thank you.

1              (BRIAN JORDAN BARTELS was duly sworn)

2              THE COURT:  Sir, do you understand that having been

3        sworn, your answers to my questions are subject to the

4        penalties of perjury or for making a false declaration if you

5        do not answer truthfully?

6              THE DEFENDANT:  I do.  Yes, I do.

7              THE COURT:  Okay.  I think --

8              MR. OTTE:  My apologies, Your Honor.

9              (A discussion was held off the record)

10              THE DEFENDANT:  Yes, I do.

11              THE COURT:  The Court notes for the record that due

12        to the COVID-19 crisis and the related miscellaneous orders

13        entered by Chief Judge Hornak at 20-MC-00466 on March 30,

14        2020, sentences have been required to occur by

15        videoconference; however, whereas here the defendant does not

16        wish to proceed by videoconference, the Court is permitted to

17        conduct what would be characterized as a hybrid sentencing

18        hearing, which is a combination of in-person and

19        videoconference hearing.

20              On December 4, 2020, the Court ordered the defendant

21        to promptly file a motion to proceed by videoconference, if

22        applicable, or motion to proceed by hybrid as outlined in that

23        order.

24              On December 8, 2020, defendant filed his notice

25        setting forth that he wished to proceed by hybrid

1     videoconference sentencing and thus defendant and his counsel

2     are appearing today in person while following CDC guidelines

3     and all other parties are appearing by video except for the

4     two witnesses or guests that we have in the courtroom.

5          The Court notes for the record that there's no

6     difference substantially or procedurally than if the parties

7     were present in the courtroom totally and appearing in person.

8          Again, to the defendant, do you understand, sir, that

9     having been sworn, your answers to my questions are subject to

10    the penalties of perjury or for making a false declaration if

11    you do not answer truthfully?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Court notes for the record that on

14    December 22, 2020, defendant entered a plea of guilty in this

15    courtroom to Count 1 of a one-count indictment at criminal

16    number 20-00116, charging the defendant with violation of

17    Title 18 United States Code Sections 231(a)(3) and Section 2,

18    obstruction of law enforcement during a civil disorder.

19    Correct, sir?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  Following your guilty plea, I directed

22    the probation office to prepare a pre-sentence investigation

23    report, which you have received, correct, counsel?

24         MR. OTTE:  Yes, Your Honor.

25         THE COURT:  Correct, sir?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  I've reviewed the pre-sentence

3     investigation report, addendum thereto and the sentencing

4     recommendation of the probation office.  I've also reviewed

5     defendant's and government's objections to paragraph 17 of the

6     pre-sentence investigation report, wherein the probation

7     office determined that the United States Sentencing Guidelines

8     Section 2J1.1 is applicable to defendant's conduct, and thus

9     the base level is a 14.

10          In support of his objection to paragraph 17,

11     defendant asserted that upon application of the United States

12     Sentencing Guidelines Section 2X5.1 to his offense of

13     conviction, Title 18 United States Code Section 231(a)(3):

14     One, both the United States Guidelines Sections 2A2.4 and

15     United States Guidelines Section 2B1.1 are sufficiently

16     analogous to Section 231(a)(3).  Two, Section 2J1.2 is not

17     sufficiently analogous to section 231(a)(3).  Third, that the

18     most analogous section to 231(a)(3) is Section 2A2.4.  And

19     fourth, because both Section 2A2.4 and Section 2B1.1 are

20     sufficiently analogous to Section 231(a)(3), the Court should

21     apply one of those provisions in determining defendant's

22     sentence.

23          Just so it's clear, the issue here is that there's

24     not a guidelines section that perfectly matches the offense to

25     which defendant has pled guilty.  So we had to search for the

1    guidelines section, the sentencing guidelines section, that

2    was the closest to the crime to which defendant pled guilty.

3         In support of its objection at paragraph 17, the

4    government contends that utilizing the element-based approach

5    as set forth by the United States Court of Appeals for the

6    Third Circuit in the United States versus Jackson 862 F.3d 325

7    decided in 2017:  One, both Section 2A2.4 and 2J1.2 are

8    sufficiently analogous to 231(a)(3); and second, the most

9    analogous section to 231(a)(3) is section 2A2.4.

10        Court eventually entered tentative findings of fact

11   sustaining both the government's objection and the defendant's

12   objection to paragraph 17.  Court now adopts its tentative

13   findings as final and sustains the objections, as I previously

14   mentioned.

15        I've reviewed the sentencing memoranda filed by the

16   defendant and government and numerous letters attached to

17   defendant's sentencing memorandum.  I compliment both counsel

18   in your diligence in not only working through the applicable

19   guidelines section, but in your memorandums that you filed.

20   It was a very professional job and I thank you for your

21   efforts in that regard.

22        Pursuant to the standing order of the Board of

23   Judges, the Court finds it's not appropriate to disclose the

24   recommendation of the probation office to counsel nor the

25   parties; however, sir, in determining your sentence, the Court

1    will not consider any matter that's not previously been

2    disclosed to you or your attorney.

3            Defense counsel, have you reviewed the pre-sentence

4    investigation report, addendum thereto and discussed them with

5    your client?

6            MR. OTTE:  Yes, Your Honor.

7            THE COURT:  Are there any errors in the pre-sentence

8    investigation report or addendum that you have not previously

9    called to the Court's attention?

10           MR. OTTE:  No, Your Honor.

11           THE COURT:  Sir, have you reviewed the pre-sentence

12   investigation report, addendum thereto and other matters and

13   discussed them with your attorney?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  Counsel, is there any legal cause why

16   sentence should not be pronounced?

17           MR. OTTE:  No, Your Honor.

18           THE COURT:  Anything else you would like to say or

19   defendant would like to say, now is your time.  And I think

20   you've also filed a motion for a variance.  So the time is

21   yours.

22           MR. OTTE:  Yes, Your Honor.  I would like to call one

23   witness, Mr. Bartels' father, George Bartels.

24           THE COURT:  He has to speak into a device.

25           MR. OTTE:  Your Honor, I'll let him speak into the

1      laptop and I can do it potentially at the stand right there.

2              THE COURT:  No, he can do it at the corner of

3      counsel's table, so you're a good 20 feet away from the rest

4      of us.  Thank you.

5              Sir, you can come forward.  You do not need to be

6      sworn.  And since you're going to be by yourself, you may take

7      your mask down for this brief period of time so the court

8      reporter can accurately take down what you're saying.

9              MR. GEORGE BARTELS:  Yes, sir.

10             THE COURT:  You need to push the screen back a little

11     bit on the top, please.  Thank you, sir.  Okay.  Speak loudly,

12     please.

13             MR. GEORGE BARTELS:  Test.  Can you hear me?

14             THE COURT:  Yes, sir.

15             MR. GEORGE BARTELS:  Thank you, Your Honor, as anyone

16     can probably imagine, the last six, seven months have been

17     incredibly difficult for our family.  Brian brought that on

18     himself; I understand that.  This has given me and my wife

19     Chandi, who is also in the courtroom, the opportunity to kind

20     of recommit to Brian and what he needs in his life to be

21     successful, to be a law-abiding citizen, to have a future and

22     display his full potential.

23             I'm sure you probably read a lot of these things

24     already in your sentencing reports and probation reports and

25     those things, but I do want to just mention a little bit of

1    background about Brian, his character and who he truly is.

2    Brian, you know he's had some mental health issues and

3    developmental issues, obsessive compulsive disorder, ADHD, to

4    name a few.  Your Honor, my son is not perfect.  I'm not up

5    here to waste the Court's time to convince you he is.  His

6    actions in late May, whatever that day was, were flat out

7    wrong.  Myself, my wife, my family and especially Brian, we

8    don't condone those actions.  We understand what he did was

9    wrong and we understand that he needs a chance to redeem

10    himself.  Brian does display many positive attributes though.

11    A 30-second video does not encapsulate everything my son has

12    and can bring to his neighborhood, communities.  He's very

13    giving, he's very generous, he's kind, he's loving.  He helps

14    others.  He gives classes to young students.  He educates

15    others about animal rights.  He has donated his time and

16    resources to needy families.  He is, at his heart, a genuinely

17    kind person.

18         I understand what you're tasked with in trying to

19    determine what is the best appropriate sentence for him.  And

20    I would like to just make a couple of points about Brian's

21    support system and his future plans.  Brian has a fantastic

22    support system.  And you know, frankly, if it weren't for the

23    COVID restrictions, we would have packed this courtroom.  My

24    wife and I were allowed to be here and we're grateful for that

25    opportunity.  But we have grandparents on both sides, aunts

1    and uncles on both sides, his brother, my brother, his

2    counselor, family, friends, others in our network of support

3    that have been with us through these last six, seven months of

4    hell.

5           Brian is on the right track.  That rehabilitation has

6    already begun. I can assure you and this Court that myself and

7    my wife are more invested in Brian's future and him following

8    the straight and narrow more than any PO or anyone affiliated

9    with the corrections system.

10          One thing that I think it's important for you to

11   know, Your Honor, my son attends counseling sessions with his

12   therapist Kerrie Boydman.  And Ms. Boydman has been

13   instrumental in helping Brian kind of filter through his

14   obsessive thoughts and what he sees are injustices and what

15   are possible in productive outcomes and solutions as opposed

16   to the counterproductive and stupid decision that he made.

17   She's helping him grow, develop and work through things in his

18   weekly counseling sessions, and I truly believe, hand on my

19   heart to God as my witness, this is a huge step in the right

20   direction for him.

21          My son Brian has also been at group recovery sessions

22   and he's been on the receiving end of a lot of great things,

23   ways to cope, ways to deal, to have peer counseling.  But one

24   thing that makes me proud as a father is that he has gone a

25   step above and beyond that and now he's giving back to that

1      group.  It's a recovery group similar to AA.  He helps

2      facilitate some of the sessions.  He's been a peer advisor to

3      others, he's been a resource to others, and actually helped

4      others.  And I think that's clicked a light bulb for Brian,

5      that he can do positive things and he can help others.

6           I also want you to know, Judge, that Brian has plans

7      for the future.  This is not a path that he's going to

8      continue to go down.  There's no prior record of this.  And in

9      my humble opinion, there's no reason to believe this would

10     ever happen again.  He's been accepted to college.  He's using

11     that turning point with his recovery to understand that he has

12     the potential to help people, he has the potential to be

13     something more than what he's been seen in these last several

14     months.  He's already been accepted to a four-year university.

15     He's going to double major in psychology and political

16     science, to help him better understand the brain, people's

17     reactions and emotions and things that have contributed to a

18     lot of the frustration and discord and chaos that our entire

19     country, not just my son, has seen in this last year.  He

20     wants to major in political science to better understand the

21     system, this very, very confusing system.  I'm 46 years old.

22     I don't fully understand how we got here, what happened.  He

23     wants to educate himself and be able to help others in his

24     future.

25           Judge Schwab, Your Honor, this is a plea for mercy

1   from a father.  I love my son very much.  I know what he did
2   was wrong.  He deserves a second chance.  He spent a couple
3   days in jail already, Allegheny County.  God blessed his hands
4   for music, playing guitar, writing songs, holding a
5   microphone, for helping others, not to have to defend himself
6   and fight in prison.  I implore you to not incarcerate my son.
7   That's not the best course of action.

8          The rehabilitation with my son has already begun.  My
9   wife and I have his support system in place.  We're going to
10  ensure that he continues to keep his grades, he continues to
11  take his employment seriously and he continues to have an
12  opportunity to redeem himself, to restore our family name and
13  to show you and the whole world -- because this has gone
14  worldwide -- most importantly, himself, what his full
15  potential is.  Please give him the opportunity to reach that
16  potential.

17         Again, my wife and I will go above and beyond in
18  ensuring we do everything that Brian becomes a positive,
19  productive member of society and a law-abiding citizen.  Thank
20  you for your time and listening to my testimony.

21         THE COURT:  Thank you for your statement and both you
22  and your wife being physically present here.  We obviously
23  have a lot of defendants who appear before this Court and have
24  no family support.  So I thank you for being physically here
25  and declaring publicly your support for him.

1          MR. GEORGE BARTELS:  Thank you, Your Honor.

2          THE COURT:  Excuse me for one minute.

3          (A discussion was held off the record)

4          THE COURT:  You may continue, counsel.

5          MR. OTTE:  Thank you, Your Honor.

6          THE COURT:  And just so it's clear to me, there's no

7   motion on behalf of neither the government nor the defendant

8   for a variance upward or downward, correct?

9          MR. OTTE:  Correct, Your Honor.  The request for a

10  variance was made just in case the government -- excuse me, in

11  case the Court were to apply the guidelines that the

12  government had previously suggested.

13         THE COURT:  On behalf of the government, there's also

14  no motion for variance upward or downward, correct?

15         MR. SWEENEY:  That's correct, Your Honor.

16         THE COURT:  Back to you, defense counsel.  It's still

17  your time.

18         MR. OTTE:  I'll be brief.  I do want to point out

19  with regard to acceptance of responsibility, as Your Honor

20  knows, in many cases, acceptance of responsibility comes right

21  before trial.  In this case, acceptance of responsibility came

22  on the drive home.  On his drive home, when he caught a ride

23  after the protest -- I would like to actually go back even

24  further.  After he had caused the damage to the police car,

25  after he had spray painted it and busted in the windows, he

1   saw the crowd getting out of hand, he realized he played a

2   role in that and he got out of there as quickly as possible.

3   He then caught a ride home.  On the ride home, he called his

4   parents and informed them he had made a stupid decision.

5   Those were his words.  That is an acceptance of responsibility

6   that occurred almost immediately.  And within 48 hours, he

7   found himself at the Pittsburgh Police headquarters,

8   explaining to the police what had happened.  His acceptance of

9   responsibility was immediate and it was fullsome.  So I think

10  we deal with the guidelines in terms of points.  We don't

11  oftentimes calculate the level of acceptance of responsibility

12  in reality.  His immediate and full acceptance of

13  responsibility saved the government and saved Pittsburgh an

14  extraordinary amount of resources, but it also reflects on who

15  he is and what he's capable of as a young man.  With that, I'd

16  like to let him make his statement to the Court.

17          THE COURT:  Okay.  Sir -- counsel, you want to move

18  six feet away.  And sir, you can take down your mask so we can

19  hear you clearly.  And if you're going to read from a

20  document, kindly read it slowly, please.  Thank you.

21          THE DEFENDANT:  Yes, Your Honor.  I thank you for the

22  opportunity to speak.  I understand why I'm here and that

23  people have been hurt because of me, people lost money because

24  of me.  People have been upset, angry, frustrated, scared,

25  made people feel less safe.  To know that an apology can't

1    erase that, can't take it back as much as I might like to, but
2    for what it's worth, I am sorry.  I made a stupid mistake and
3    a lot of people have had to pay for it.  I think back to May,
4    leading up to what happened, I was hopeless, angry,
5    frustrated, I had all these emotions and I went out and I made
6    a problem worse.  I wanted to help; instead, I hurt people.
7    Quite frankly, it's embarrassing.  It's sad how I handled that
8    and how I alienated people from a cause I believed in and
9    brought violence and fear to my community.  I looked at what
10   happened.  I looked at that failed attempt and thought what
11   can I do that's better, what can I do that will actually help.
12          So as a direct result of what happened last year, I
13   did change my major from music, music education, to psychology
14   and political science.  I don't know exactly what I'm going to
15   do with that degree yet.  What I do know is that in June of
16   2019, I went to a rehabilitation center, Gateway, not just to
17   get clean, but to fix some deeper problems within myself, and
18   I'm not perfect.  I'm still learning.  I'm still trying to do
19   better every day.  But the person I was before Gateway was
20   hopeless, depressed, a black hole that was not recognizable
21   from who I was before that.  And when I want to Gateway and
22   started working with a personal therapist and working on
23   myself, I found healthier ways to cope with those problems.
24   Those therapists helped me so much.  And if I can have the
25   opportunity to go to the school that I was accepted into in

1    the fall and train to be able to do that to someone else, to

2    be able to be that person to somebody who needed it as much as

3    I did, to me, that would be worthwhile.  I want to be able to

4    channel my energy towards something productive and helpful and

5    effective.  I can't hammer home how sorry I am.  I can't think

6    of a single person I shouldn't be apologizing to right now.

7    I'm looking forward to a future where I can channel my drive

8    and passion in a productive, mature, effective, healthy and

9    legal way.  Thank you, Your Honor.

10           THE COURT:  Thank you for your statement.  Anything

11   else, counsel?

12           MR. OTTE:  No, Your Honor.

13           MR. SWEENEY:  Your Honor, may I -- this is Shaun

14   Sweeney, may I make argument with respect to the 3553(a)

15   factors at some point?

16           THE COURT:  Sure.  You just have to wait your turn,

17   if you kindly would, please.

18           MR. SWEENEY:  I'll do that, Your Honor.

19           THE COURT:  Sir, are you satisfied with the

20   representation of your attorney?

21           THE DEFENDANT:  Yes, sir, I am, Your Honor.

22           THE COURT:  Has he done everything you've asked him

23   to do?

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  Is there anything he's done you think he

1    should not have done?

2            THE DEFENDANT:  No, Your Honor.

3            THE COURT:  On behalf of the government, what is your

4    position today, please?

5            MR. SWEENEY:  Judge, I know that the Court is going

6    to consider the factors under 18 USC Section 3553(a) and both

7    Mr. Bartels, younger and his father, have spoken with respect

8    to one of those factors, that being the history and

9    characteristics of the defendant.  But I'd like to talk

10   briefly about the nature and circumstances of the offense

11   under 3553(a), which really is the factor that brings

12   Mr. Bartels to the court today to be sentenced for a federal

13   felony.  And I want to emphasize three points from the offense

14   conduct relating to the nature and circumstances of the

15   offense that I think are important here.

16           First of all, the defendant went to the protest

17   obviously prepared to, at a minimum, damage or destroy some

18   property.  He showed up with a backpack with spray paint in

19   it.  He made that decision before he left his house.

20           Secondly, Your Honor, he didn't just choose random

21   property, a wall or a building or a window to begin his

22   destruction, he specifically targeted a police vehicle, a

23   police SUV that was there with police officers whose job was

24   to provide security and deterrence, to protect the protestors

25   who were there to have their voices heard.  They were there to

1     protect and maintain peace and safety for everybody there.

2     But Mr. Bartels chose to attack the police vehicle.

3          And third, Your Honor, he chose to be the instigator

4     for this chaos.  He's the one that first went over to the

5     police car, spray painted it, jumped up on the roof, smashed

6     the windshield out.  He is the one who really was the one who

7     caused the problems here with the crowd in that area.  So that

8     a police officer approximately 50 yards away, who was assigned

9     to that SUV that the crowd was destroying, chose to back

10    off -- wisely chose to back off because the crowd had just

11    descended upon that vehicle and was destroying it.  He could

12    no longer do his job.  Fortunately, nobody was seriously

13    injured up at that scene.  But those three things, Your Honor:

14    He came prepared, he chose a police vehicle and he caused some

15    significant chaos.  That's why Mr. Bartels is here being

16    sentenced for a federal felony.  And I would just like the

17    Court to consider those three points in imposing sentence here

18    today.

19          THE COURT:  Counsel, I just want to confirm that the

20    applicable sentencing guidelines section is 2A2.4, that the

21    offense level is an 8.  The criminal history category is a I.

22    And that the resulting advisory guideline range is zero to six

23    months imprisonment, one to three years of supervised release,

24    probation of not less than one year, but no more than five

25    years, a fine of $2,000 to $10,000, an agreed-to restitution

1    amount of $1,000 and a special assessment of $100.

2            Am I correct in my summary of the applicable

3    guideline range and offense level, criminal history category

4    and sentencing range?  On behalf of the defendant?

5            MR. OTTE:  Yes, Your Honor.

6            THE COURT:  On behalf of the government, please?

7            MR. SWEENEY:  Yes, Your Honor.

8            (A discussion was held off the record)

9            THE COURT:  I think the fine amount is actually

10    $2,000 to $20,000.  Do you agree with that correction on

11    behalf of the defendant?

12            MR. OTTE:  That does sound correct, Your Honor.

13            THE COURT:  On behalf of the government, please?

14            MR. SWEENEY:  I think so, Your Honor, yes.

15            THE COURT:  And the restitution amount as agreed to

16    is $1,000?  On behalf of the defendant?

17            MR. OTTE:  Yes, Your Honor.

18            THE COURT:  And on behalf of the government?

19            MR. SWEENEY:  We stipulated to that, yes, Your Honor.

20            THE COURT:  Thank you for working together on that

21    particular issue.

22            Sir, your sentence is as follows:  Pursuant to the

23    Sentencing Reform Act of 1984, it is the judgment of the Court

24    that the defendant be sentenced to a term of imprisonment in

25    addition to whatever time he's already served to one day in

1    the custody of the United States Marshal Service.  Thereafter,

2    he shall serve three years in supervised release and he shall

3    reside for a period of 180 days, the first 180 days of his

4    supervised release, in a residential reentry center, probably

5    Renewal, to commence as soon as arrangements can be finalized

6    by the probation officer, and he will be required to observe

7    all the rules of that facility.

8         So as to the one year -- one day in the marshals

9    custody, that term of imprisonment will be served today.

10   Immediately following this proceeding, defendant shall be

11   accompanied by his attorney and shall proceed to the office of

12   the United States Marshal Service where he'll be taken into

13   custody.  They are prepared to receive him today.  And as I

14   said, the term of imprisonment will be followed as soon as

15   possible for 180 days; in other words, six months, at a

16   residential reentry center as soon as a bed is available,

17   which I believe will be very promptly.

18        It is further ordered that defendant shall pay

19   restitution in the amount of $1,000.  Payment is to be made to

20   the Treasurer of the City of Pittsburgh and shall be mailed to

21   the Office of Controller, City of Pittsburgh, City-County

22   Building, 414 Grant Street, Pittsburgh, Pennsylvania 15219.

23   The defendant shall make restitution payments at the rate of

24   not less than 10% of his gross monthly earnings or $250,

25   whichever is greater.  The first payment shall be made within

1   30 days of this judgment.

2       The victim's recovery is limited to the amount of its

3   loss and defendant's liability for restitution ceases if and

4   when the victim receives full restitution.  Defendant shall

5   apply all moneys received from income tax refunds, lottery

6   winnings, inheritances, judgments and anticipated or

7   unexpected financial gains to this outstanding Court ordered

8   financial obligation within ten days of receipt thereof unless

9   excused from doing so by order of the Court.  Court finds the

10  defendant does not have ability to pay interest, therefore

11  interest is waived.

12      While on supervised release, defendant shall not

13  commit another federal, state or local crime, shall comply

14  with the standard conditions that have been adopted by the

15  this Court and shall comply with the following additional

16  conditions:

17      One, defendant shall reside for a period of 180 days

18  at a residential reentry center -- as I said before, probably

19  Renewal -- to commence as soon as arrangements are finalized

20  by the probation officer, and shall observe all rules of that

21  facility.

22      Two, defendant shall not illegally possess a

23  controlled substance.  Supervised release must be revoked for

24  possession of a controlled substance.

25      Three, defendant shall not possess a firearm,

1    ammunition, destructive device or other dangerous weapon.

2    Supervised release must be revoked for possession of a

3    firearm, ammunition, destructive device or other dangerous

4    weapon.

5          Four, defendant shall participate in a program of

6    testing and, if necessary, treatment for substance abuse, said

7    program approved by the probation officer until such time as

8    defendant is released from the program by the probation

9    officer and/or the Court.  Further, the defendant shall be

10   required to contribute to the cost of services for any such

11   treatment in an amount to be determined by the probation

12   officer, but not to exceed actual costs.  Defendant shall

13   submit to one drug urinalysis within 15 days of being placed

14   on supervision and at least two periodic tests thereafter.

15        Five, defendant shall not purchase, possess, and/or

16   use any substance or device designed to alter in any way or

17   substitute defendant's urine specimen for drug testing.  In

18   addition, the defendant shall not purchase, possess and/or use

19   any device designed to be used for the submission of a third

20   party's urine specimen.

21        Six, defendant shall submit his person, property,

22   house, residence, vehicle, papers, business or place of

23   employment to a search conducted by the United States

24   probation officer at a reasonable time, in a reasonable

25   manner, based on a reasonable suspicion of contraband or

1    evidence of a violation of a condition of supervision.

2    Failure to submit to a search may be grounds for revocation.

3    Defendant shall inform any other residents that the premises

4    may be subject to searches pursuant to this condition.

5         Seven, defendant shall participate in a mental health

6    assessment and/or treatment program approved by the probation

7    officer until such time as the defendant is released from the

8    program by the Court and/or the probation officer.  Defendant

9    is required to contribute to the cost of services for any such

10   treatment in an amount to be determined by the probation

11   officer.  These costs shall not exceed the actual costs.  The

12   probation office is authorized to release defendant's

13   pre-sentence investigation report to any treatment provider,

14   if so requested.

15        Eight, defendant shall pay restitution, as I

16   mentioned earlier, that is imposed by this judgment at a rate

17   of not less than 10% of his gross monthly earnings or $250,

18   whichever is greater.  The first payment shall be due within

19   30 days of this judgment.

20        Nine, defendant shall report any change of address

21   within 30 days to the United States Attorney's office while

22   any portion of the restitution remains outstanding.

23        Ten, defendant is prohibited from incurring new

24   credit card charges or opening additional lines of credit

25   without prior written approval of the probation officer.

1          Eleven, defendant shall provide the probation officer

2     with access to any requested financial information.

3          Twelve, defendant shall cooperate in the collection

4     of DNA as directed by the probation officer.

5          Court also imposes a mandatory special assessment of

6     $100, constituting $100 special assessment at each count to

7     which defendant has pled guilty, which shall be paid to the

8     Clerk of Court forthwith.

9          Based upon the financial information contained in the

10    pre-sentence investigation report, the Court finds the

11    defendant does not have the ability to pay a fine and

12    therefore waives imposition of any fine.

13         Sir, the reason for your sentence is as follows:  The

14    sentence of imprisonment of one day in the custody of the

15    United States Marshal Service, in addition to whatever time

16    you've already served in incarceration, plus three years of

17    supervised release, with the defendant residing in a

18    residential reentry center for a period of 180 days, plus the

19    restitution, is sufficient but not greater than necessary to

20    comply with the goals of sentencing as set forth in Title 18

21    United States Code Section 3553(a)(2), which are to reflect

22    the seriousness of the offense, to promote respect for the law

23    and provide for just punishment, to afford adequate deterrence

24    to criminal conduct, to protect the public from further crimes

25    by this defendant, and to provide the defendant with needed

1   education or vocational training, medical care or other

2   correctional treatment in the most effective manner.  The

3   Court has considered all the sentencing factors as set forth

4   in Title 18 United States Code Section 3553(a), including

5   those presented by the government and defense and as set forth

6   in the pre-sentence investigation report and addendum thereto.

7         Furthermore, I considered the following:  First, the

8   Court has considered the nature and circumstances of the

9   offense.  Defendant pled guilty to obstruction of law

10   enforcement during a civil disorder in violation of Title 18

11   United States Code Sections 231(A)(3) and 2 as a result of

12   this criminal conduct on May 30, 2020.

13         Defendant was a part of a large crowd of protestors

14   milling around the area of Centre Avenue above the PPG Paints

15   Arena in Downtown Pittsburgh near an unoccupied Pittsburgh

16   Police sports utility vehicle when he removed a can of red

17   spray paint from his backpack and sprayed an A on the police

18   vehicle.  Defendant then jumped on the hood of the police

19   vehicle, sprayed more paint on the vehicle and stomped on the

20   windshield, breaking it.  Several people in the crowd began

21   cheering him and some people joined in, hitting and kicking

22   the police vehicle.  Defendant jumped off the hood and

23   attempted to break the passenger's side of the vehicle.  The

24   police officer assigned to the SUV was approximately 50 feet

25   away from the vehicle when the destruction occurred.  After

1    the destruction began, he deemed it prudent to stand down and

2    abandon the vehicle, rather than attempting to regain control

3    of the vehicle or to make any arrests during the civil

4    disobedience.

5        It's certainly true that thereafter, defendant did

6    admit to the police that he initiated the attack on the

7    vehicle, but defendant's conduct is serious criminal conduct

8    and it was not a mistake, it was a crime.  His conduct is

9    further set forth in paragraphs 8 through 13 of the

10   pre-sentence investigation report, which I incorporate by

11   reference.

12       Obviously, the difficulty in a sentence like this is

13   the defendant has no past criminal history, but he did engage

14   in serious criminal conduct.  Obviously, sentencing him within

15   the guideline range of zero to six months imprisonment, even

16   if it was a sentence of six months imprisonment, but with

17   COVID-19 and the transportation issues and other logistics

18   relating to a sentence of zero to six months, and in light of

19   the need to have the defendant become a productive citizen as

20   quickly as possible, I've chosen the supervised release

21   provision with 180 days in the Renewal Center, which will keep

22   him in Pittsburgh but also greatly limit his freedom, which is

23   just punishment for his criminal conduct.

24       Second, the Court has considered defendant's

25   criminal, family and social history and his personal

1    characteristics as further outlined in the pre-sentence

2    investigation report at paragraphs 26 through 52, which the

3    Court incorporates by reference as a basis for this sentence.

4    The defendant is approximately 21 years old, has no criminal

5    history, as I've mentioned, is a college student and planning

6    further education as we heard from his father today.  He

7    suffers from numerous mental health issues, for which he's

8    currently seeking and receiving professional treatment.

9    Hopefully, there will be a way that that can continue even

10   though he is physically confined to the Renewal Center.

11   Defendant has a history also of substance abuse and he's

12   receiving professional help in that regard.  I do thank anyone

13   who -- and the various people who wrote letters on his behalf.

14   He's fortunate to have a strong family and friend network to

15   support him.

16          Third, the Court has considered the kinds of

17   sentences available for this offense and the sentencing

18   guideline range under the advisory guidelines and applicable

19   policy statements adopted by this Court -- adopted by the

20   Sentencing Commission.

21          And fourth and finally, the Court has considered the

22   need to avoid unwarranted sentencing disparities among

23   defendants who have been found guilty -- with similar records

24   who have been found guilty of similar conduct.

25          On behalf of the government, does my statement of

1    reasons adequately address all objections, concerns and issues

2    raised?

3              MR. SWEENEY:  Yes, Your Honor.

4              THE COURT:  Are there any other sentencing factors

5    under Section 3553(a) that the Court has failed to address?

6              MR. SWEENEY:  No, Your Honor.

7              THE COURT:  On behalf of the defendant, does my

8    statement of reasons adequately all objections, concerns and

9    issues raised?

10             MR. OTTE:  Yes, Your Honor.

11             THE COURT:  Are there any other sentencing factors

12   under Section 3553(a) that the Court has failed to address?

13             MR. OTTE:  No, Your Honor.

14             THE COURT:  Have you talked to your client about his

15   right to appeal?

16             MR. OTTE:  Yes, Your Honor.

17             THE COURT:  Sir, I'm going to review your right to

18   appeal.  Except as otherwise waived in the plea agreement, you

19   have the right to appeal from the orders of this Court, the

20   judgment of guilty and/or from the sentence imposed.  You have

21   a right to have an attorney represent you on appeal at no cost

22   to you.  If you cannot afford them, certified copies of the

23   necessary records and transcripts will be furnished at the

24   expense of the United States government.  If you appeal, the

25   notice of appeal must be filed within 14 days of today;

1   otherwise, you will lose your right to appeal.  If you

2   request, the Clerk of Court will immediately prepare and file

3   a notice of appeal on your behalf.

4           Sir, do you wish to appeal from the orders of Court,

5   judgment of guilty and/or from the sentence imposed?

6           THE DEFENDANT:  No, Your Honor.

7           THE COURT:  Do you understand that if you change your

8   mind and decide to appeal, any notice of appeal must be filed

9   within 14 days of today, otherwise you will lose your right to

10  appeal?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  And if you request -- if you decide to

13  appeal because you've changed your mind, you'll have your

14  current counsel file any notice of appeal, correct?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  So it's clear, counsel, you're now

17  obligated to take the defendant down to the United States

18  Marshals; and then thereafter to coordinate with the probation

19  officer the arrangements relating to defendant's confinement

20  at Renewal.

21          So on behalf of the probation officer, since we have

22  everybody on the phone at one time or on the video, do you

23  want to explain some logistics that would help in the

24  coordination with defense counsel and defendant, please.

25          PROBATION OFFICER:  Absolutely, Your Honor.

1                THE COURT:  State your name, please.

2                PROBATION OFFICER:  Tracy DeMartino, supervising

3        probation officer.

4                THE COURT:  Welcome.  Thank you for your work.

5                PROBATION OFFICER:  Thank you.  As long as Brian's

6        contact phone number is accurate -- if he can verify that the

7        phone number is accurate.

8                THE COURT:  Well, why don't we -- why don't you just

9        state the last four digits of the phone number.

10               PROBATION OFFICER:  9506.

11               THE DEFENDANT:  That's correct.

12               PROBATION OFFICER:  Okay.  As soon as you're released

13       from incarceration, an officer will be contacting you tomorrow

14       in order to set up some information with regards to when you

15       would be placed at Renewal and any information with respect to

16       reporting prior to being placed at Renewal.

17               THE COURT:  Understand?

18               THE DEFENDANT:  Yes, Your Honor.

19               THE COURT:  And just so it's clear, the goal of this

20       was to provide punishment for your wrongdoing, but to have it

21       occur immediately or as soon as possible as opposed to having

22       to wait for an uncertain period of time to serve your sentence

23       at some federal institution.  But the three years supervised

24       release needs to be followed exactly and precisely and your

25       counsel will explain to you the consequences of violating the

1   terms of your supervised release.

2           On behalf of the government, anything else, sir?

3           MR. SWEENEY:  No, thank you, Your Honor.

4           THE COURT:  Anything else on behalf of the defendant?

5           MR. OTTE:  No, Your Honor.

6           THE COURT:  I want to thank defendant's parents for

7   being here and for supporting him.  As I said earlier, most

8   defendants appear, have no family and no support system, so

9   I'm encouraged by your willingness to stand by your son and to

10  speak on his behalf today.  I wish everybody well.  Stay safe.

11  I adjourn this hearing.

12                  C E R T I F I C A T E

13           I, MARSIA L. BALOBECK, certify that the foregoing
    is a correct transcript from the record of proceedings in the
14  above-entitled case.

15

16   \s\ Marsia L. Balobeck          06/02/2021
    MARSIA L. BALOBECK               Date of Certification
17  Official Court Reporter

18

19

20

21

22

23

24

25